# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Tyran Pinkins

        -Plaintiff

                           Case No:               **19 CV 368**

     vs.

                           Violations of the 4th and 14th Amendments of the U.S. Constitution by 42 U.S.C. § 1983, Pendent State Claim, and under the Americans with Disabilities Act, 42 U.S.C.12101

| | |
|---|---|
| City of Racine | and |
| Racine Police Officer Joshua Diedrich | and |
| Racine Police Officer Todd J. Lauer | and |
| The County of Racine Wisconsin | and |
| Geoffrey Thompson | and |
| Andrew Ellenberger | and |
| Latisha Ramos | |

        -Defendant(s)

---

**Plaintiff's Reply Brief Opposing Defendant County of Racine's Motion for Sanctions**

---

Now Comes the Plaintiff Tyran Pinkins by his attorneys Paul Strouse of Strouse Law Offices, B'Ivory LaMarr of the LaMarr Firm and Thomas Napierala of Napierala Law Offices and file and present to the Court Plaintiff's Response to Defendant

## I.     STATEMENT OF RELEVANT FACTS

The Plaintiff incorporates by reference the procedural history and factual background as set forth in Plaintiff's *Proposed Findings of Fact in Support of their Opposition to the County's*

*Motion for Summary Judgment*[1] as though fully set out herein. Plaintiff will cite to Plaintiff's *Proposed Findings of Fact* ("PPFF") filed in response to the County of Racine's *Motion for Summary Judgment.*

## II.    STANDARD OF REVIEW

A Motion pursuant to Rule 11

> "should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately could be disposed of by a motion to dismiss, a motion for Summary Judgment on the pleadings, a motion for summary judgment, or a trial on the merits.[2]

> "We hold that a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading."[3]

Here, Defendant's *Motion for Sanctions* raises questions as to both the legal sufficiency and the factual integrity of the Plaintiffs' claims brought in his *Second Amended Complaint.* The Defendant 's *Motion for Sanctions* includes language which more closely pertains either to a Motion pursuant to Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or Rule 56 (Summary Judgment). Defendants' requests, at the outset and in an improper pleading, that this Court weigh the merits of the Plaintiff's claims and Plaintiff's ability to have ascertained the truth of matters contained.

## III.    NATURE OF RULE 11 SANCTIONS

The purpose of Sanctions pursuant to Rule 11 is not to "raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of" by other allowable

---

[1] ECF. No. 126, Attachment 1.
[2] *In re Unified Messaging Solutions, LLC Patent Litig.*, MDL No. 2371, at *9 (N.D. Ill. Sep. 25, 2013).
[3] *Milwaukee Concrete Studios v. Field Mfg. Co.*, 8 F. 3d 441, 450 (E.D. Wis. 1991).

Motions.[4] Rule 11(b) requires that a person or persons signing a Complaint or other document, whether an attorney or a party, attests that the claims therein are warranted (1) by the existing substantive law, or (2) a nonfrivolous argument for the extension, modification, or reversal of the existing substantive law, or (3) a nonfrivolous argument for the establishment of new substantive law that would be applicable in the case before the Court.[5] Generally, the standard for evaluating conduct pursuant to Rule 11 is "objective reasonableness under the circumstances" at the time the contention was made.[6] The 1993 Amendment to Rule 11 recognizes that "sometimes a litigant may have good reason to believe that a fact is true or false, but may need discovery formal or informal, from opposing parties or third parties to gather and confirm the evidentiary basis for the allegation. Rule 11 specifically allows for pleadings based on evidence reasonably anticipated to be found after further investigation or discovery.[7]

## SUMMARY OF ARGUMENT

First, it is to be expected and entirely in the interest for the Defendants to adopt the position that there is no merit to the Plaintiff's claims. However, the base determination of merit is completely groundless under the very limited scope of Rule 11 which is evaluated at the time Plaintiffs intended to prosecute said claims. Instead, Defendants rest their entire argument in trying to determine "merit" based on personal grievances with one of the Plaintiff counsel's conduct which is completely isolated from the requirements of good faith in accordance with Rule 11.

---

[4] *Armament Sys. v. Northland Fishing Tackle*, No. 01-C-1122, at *5 (E.D. Wis. Dec. 29, 2005)
[5] *F.D.I.C. v. Tekfen Const. and Installation Co.*, 847 F. 2d 440, 442 (7th Cir. 1988)
[6] *Id*.
[7] *Zimmerman v. Logemann*, 09-cv-210-slc at *13 (W.D. Wis. Nov. 30, 2009)

Defendants maintain that Rule 11 sanctions are warranted because of his belief that Plaintiffs failed to respond to his inquiries in a satisfactory manner. Such assertions are not in any way rooted in precedent to establish Rule 11 violations. Furthermore, counsel's opinion has never been recognized as a cognizable basis to determine the merit or reasonable basis of the Plaintiff's pursuit of such claims. Defendants also argue that Plaintiff's counsel repeatedly asked for discovery, despite some of it being previously provided. Plaintiff's act of requesting supplementation of records from Defendants in no way demonstrates frivolity. Instead, it demonstrates efforts to ensure completeness and accuracy of the records upon the presumption that what was provided was incomplete, which is a quite common occurrence in litigation. At best, the request for the same would demonstrate an effort to ensure completeness, or at worst, an organizational misstep grounded in organization, not frivolity to the claims itself as recognized under Rule 11.

On February 24, 2021, in response to Defendants continued demands, Plaintiff asked for additional time to respond to such to evaluate whether the Plaintiff would agree to dismiss claims against the County Defendants[8]. Such acknowledgement by Plaintiff was not required and the failure to respond to counsel's purported effort to intimidate, does not in any way determine the basis or the merit of claims against the County Defendants. Plaintiffs have no duty whatsoever under Rule 11, to provide opposing counsel, a "sneak peek" into Plaintiff's theories to better prepare Defendants in preparation of his clients, County Defendants, Ellenberger and Thompson.[9] Rule 11 does not require a plaintiff to *prove* anything, merely to *inquire*.[10] A reasonable inquiry

---

[8] *See Declaration of Paul Strouse at 7*

[9] *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990) ("Rule 11 does not impose a continuing obligation on attorneys to reevaluate the merits of the case as the litigation develops").

[10] *Foster v. Michelin Tire Corp*., 108 F.R.D. 412, 415 (C.D. Ill. 1985) (citing *Taylor v. Belger Cartage Service, Inc*., 102 F.R.D. 172, 181 (W.D. Mo. 1984).

need only demonstrate that the complaint is "grounded in fact."[11] The complaint need not reveal information sufficient to sustain a claim in a court of law.[12] A more fully developed record may indicate that the facts elicited after reasonable inquiry were erroneous, incomplete or simply misunderstood thus subjecting a claim to dismissal under Fed. R. Civ. P 12(b)(6), but under Rule 11 attorneys remain "free to assert claims where the facts and law are less than clear."[13]

Furthermore, Defendants delayed the depositions of both Ellenberger and Thompson and insisted that he would not offer Ellenberger nor Thompson until Plaintiff Pinkins had been fully deposed[14]  This demonstrates a calculated and strategic effort to gain an advantage against Plaintiffs which clearly resulted in delays by Defendants that were entirely self-serving. The Plaintiff's compliance with Defendants' requests was not required and was further improper seeing as though the Plaintiff had not yet had an opportunity to conduct depositions of the Defendants, Ellenberger and Thompson. On March 5, 2021, Plaintiff made another request for documents that Defendants believed had been produced on seven (7) occasions. One of the big problems is that the Defendant had responded to Plaintiff's Interrogatories with a duplicitous "cut and paste" response, which delayed the Plaintiff in preparing his case[15].  Defendants fail to realize that the supplemental discovery sought by the Plaintiffs were not solely the documents inclusive of the 695 pages already provided, but instead Plaintiff sought missing medical records, grievances, and complaints that the Plaintiff believed to have been destroyed by Defendants.[16]

On March 10, 2021, Attorney Sosnay emailed Plaintiffs to inquire about the March 22, 2021, deadline to respond to his inquiries, which continued to delay Plaintiffs from timely pursing

---

[11] *Id*. at 416; *see* Fed. R. Civ. P. 11.
[12] *Id*.
[13] *Id*. (citing *Taylor v. Belger Cartage Service, Inc*., 102 F.R.D. 172 (W.D. Mo. 1984)).
[14] See Strouse Declaration at 8
[15] See Strouse Declaration at 9 and ECF 85
[16] *PPFF,* pp. 61, 76.

depositions of Ellenberger and Thompson[17]. Defendant Thompson was deposed on April 14, 2021, and Defendant Ellenberger was deposed on April 16, 2021. In addition to the evidence provided in the 695 pages of medical records, the direct admissions from Thompson and Ellenberger[18] proved to be critical in further establishing the claims against the Defendants.

Finally, given the nature, generally, of Rule 11 Sanctions available, and the punitive and deterrent purposes of Rule 11 Sanctions, one can and should infer that Defendant's strategy of filing its Rule 11 Motions prior to the determination of the merits is a strategy to punish or deter the pursuit of claims which may otherwise be meritorious, and to threaten with personal liability any attorney or party who seeks to vindicate their rights against Defendants. The court must give the rule its plain meaning and apply the text rather than try to improve upon it.[19] If interpretation is necessary, the court must consider both the purpose of the rule and the deficiencies in its prior form which the amendment was designed to correct.[20]

## IV.    THE DEFENDANT'S MOTION FOR SANCTIONS IS NEITHER WARRANTED NOR APPROPRIATE

Turning to the merits of Defendant's *Motion for Sanctions*, Rule 11 Motions are not to be used to "raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by other allowable motions.[21] Since the Defendant has brought arguments inappropriate for Rule 11 Motions, including arguments as to the legal and factual sufficiency of the Plaintiffs' claims, his *Motion for Sanctions* is inappropriately filed and unwarranted. At best, the Defendant's *Motion for Sanctions* can be viewed as a disguised motion pursuant to Rule 56 because the

---

[17] See Strouse Declaration at 8
[18] *PPFF,* pp. 21-27, 30-40, 41-42, 45-46, 49, 57-60, 64, 69, 80-81.
[19] *Pavelic LeFlore v. Marvel Group,* 493 U.S. 120, 123, 126, 110 S. Ct. 456, 107 L.Ed.2d 438 (1989).
[20] *Cooter,* 496 U.S. at 392, 110 S. Ct. at 2454.
[21] *Armament Sys. v. Northland Fishing Tackle*, No. 01-C-1122, at *5 (E.D. Wis. Dec. 29, 2005)

Defendant argues the merits of the Plaintiff's claims in its *Moton for Sanctions* as opposed to arguing procedural requirements pursuant to Rule 1l.

## V. THERE IS NO EVIDENCE THAT PLAINTIFFS HAVE BROUGHT CLAIMS AGAINST THE COUNTY DEFENDANTS FOR AN IMPROPER PURPOSE AND WERE NOT IN GOOD FAITH

The County sums up its claims against Plaintiff in the following:

The County claims that Plaintiffs possessed records more than seven months prior to filing its second amended complaint and that there was not a "reasonable inquiry" due to vague and ambiguous allegations against Deps. Ellenberger and Thompson.[22] The Defendants attempt to circumvent their failure to challenge what they now construe as "vague and ambiguous allegations against Ellenberger and Thompson." Under FRCP Rule 12(E), a *Motion for More Definite Statement* cannot be circumvented and effectuated through a FRCP 11 Motion *for Sanctions*. "To obtain relief from waiver under Rule 12(e), a party must present a legitimate explanation for his failure to raise the issue in a timely manner."[23]

The Defendant's late stage effort to now complain of vague and ambiguous allegations through the use of Rule 11 sanctions is improper and used as a mechanism to burden the Plaintiff while responding to the Defendant's dispositive motions.

Second, the County Defendants assert that the Plaintiff's repeated reference to alleged "deliberate indifference" to Plaintiffs medical needs is improper because deliberate indifference is not the appropriate standard applicable to pretrial detainees who are entitled to objectively

---

[22] ECF 118, p. 118.
[23] *Anderson,* 472 F.3d at 670 (citation omitted); *U.S. v. Chanley*, 2:07-cr-00150-RCJ-RJJ, at *6 (D. Nev. Aug. 10, 2009).

reasonable care.[24] The County relies on *Miranda v. County Lake*[25] to support such assertion. However, the County Defendant's interpretation is entirely misplaced as they excluded the following language in *Miranda* that requires such mandate applicable to prisoners "whom are in the custody of medical care at the facility.[26]" There are no allegations, whatsoever, in the instant case of Pinkins ever being in the "custody of medical care" during the time of his allegations against Defendants Ellenberger and Thompson.  Thus, this standard of restricting available deliberate indifference claims is completely misplaced and wholly inapplicable to Pinkins.

> When detainees are **under the care of medical experts**, non-medical jail staff may generally trust the professionals to provide appropriate medical attention. *E.g.*, *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 676, 678–79 (7th Cir. 2012); see also *Rashov. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017) (holding that medical professionals were not liable when sued in their capacity as "prison administrators and policymakers, not treaters"). We will not find a jail official to have acted with deliberate indifference **if she reasonably relied on the judgment of medical personnel**. *E.g.*, *Greeno*, 414 F.3d at 655–56; *Estate of Perry v. Wenzel*, 872 F.3d 439, 458–59 (7th Cir. 2017). On the other hand, if jail officials had reason to know that their medical staff were failing to treat or inadequately treating an inmate, liability is possible. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Rice*, 675 F.3d at 676.[27]

Here, the record is clear that Pinkins was not "under the care of medical experts" at the times Plaintiff's allegations of deliberate indifference were made against Ellenberger for a three-day delay in care for the Plaintiff's worsening eye condition,[28] Ellenberger's disposal of Plaintiff's written medical requests,[29] and Ellenberger's failure to provide medical assistance in response to a seizure suffered by the Plaintiff.[30]  Moreover, there is evidence to Plaintiff's argument that

---

[24] ECF 118, p. 118.
[25] *Miranda v. County Lake*, 900 F. 3d 335, 350-52 (7th Cir. 2018).
[26] *Id at 343*.
[27] *Id*. at 343.
[28] *PPFF*, pp. 1-3, 5-16, 56-58, 60, 81.
[29] *PPFF*, pp. 61, 76.
[30] *PPFF*, pp. 79-80.

Defendants Ellenberger and Thompson's delay and/or failure to provide immediate medical care to Pinkins was not due to their reliance "on the judgment of medical personnel."[31]

Instead, the Plaintiff's claims are entirely based in good faith and further supported by recent case law from this District Court. "A prison official's decision to ignore a request for medical assistance can be enough to show deliberate indifference."[32] To state a claim for deliberate indifference to a serious medical need, a plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition."[33] Thus, the County Defendant's arguments relying on *Miranda* are distinguishable to the facts of the present case.

Finally, the County Defendants purport that Plaintiff's claims are frivolous and sanctionable because the record reflects that Plaintiff was "seen" by medical staff during the approximately 200 days of incarceration and the record lacks evidence to deem that such care was inadequate.[34] However, Ellenberger clearly admits to being deliberately indifferent to Plaintiff's worsening eye condition under the standard operating procedures in place at RCJ when he was required to seek immediate attention, rather than routine medical care[35] and threw Plaintiff's written medical requests in the garbage.[36] Similarly, Thompson also deviates from providing Plaintiff with immediate care for seizures.[37]

---

[31] *See Plaintiff's MSJ Response, p. 2-4 and PPFF 2-3,5*
[32] *Petties v. Carter*, 836 F. 3d 722, 729 (7th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *Hoskins v. Fisher*, No. 19-C-873, at *4 (E.D. Wis. July 11, 2019).
[33] *Perez v. Fenoglio*, 792 F. 3d 768, 776 (7th Cir. 2015); *Farnham*, 394 F. 3d at 478 (finding it "appropriate" in the context of deliberate indifference to apply the same standard to claims arising under the Fourteenth and Eighth Amendments, which are applicable to detainees and convicted prisoners, respectively); *Vanidestine v. Marinette Cnty. Jail*, No. 18-C-1776, at *9 (E.D. Wis. Apr. 12, 2019); *see also See Plaintiff's MSJ Response, p. 2-4 and PPFF 2-3,5.*
[34] ECF 118, p. 9.
[35] *PPFF*, p. 1-3, 5-16, 56-58, 60, 81.
[36] *PPFF*, p. 61, 76.
[37] *PPFF*, pp. 79-80.

Again, the Plaintiff's claims against the County Defendants are not for inadequate medical care, but rather for deliberate indifference to an open and obvious need for immediate medical care. If the Plaintiff were to have brought claims for "medical malpractice," a Wisconsin State law claim requiring a substantial deviation from the standard of care, the claim would have been brought against medical staff at RCJ.[38] Defendants Ellenberger and Thompson are not alleged to have provided medical care to Pinkins, thus, an expert is not necessitated to opine as to the sufficiency of such care. Instead, the Plaintiffs claims are that of deliberate indifference which is specifically related to the "delay" and "denial" of making such medical care available.[39] Therefore, all County's assertions that Plaintiff allegedly received care each time he requested care, is simply not at issue. Rather, the delay in medical care, by converting immediate care into a routine (and thereby delayed) appointment for Plaintiff's right eye and for seizures are the issues.[40]

The issue is specifically relegated to the delays and denials in receiving such care, not the amount of time(s) routine medical care was provided. Moreover, the County Defendants, again, gloss over the evidence of Pinkins' oral complaints made both to Ellenberger and Thompson, that were routinely denied and had no written record.[41] Finally, the County Defendants, also fail to consider allegations made by Pinkins of the numerous written requests for medical attention that were "thrown in the garbage" by County Defendants.[42] Again, no written record would exist to support such allegation and it is entirely up to the trier of fact to determine the sufficiency of such

---

[38] A claim for medical malpractice, as all claims for negligence, requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. *See Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 462, 475, 529 N.W. 2d 594 (1995). In short, a claim for medical malpractice requires a negligent act or omission that causes an injury. *Paul v. Skemp*, 242 Wis. 2d 507, 520 (Wis. 2001).

[39] *Love v. Nyklewicz*, 641 F. App'x 558, 5 (7th Cir. 2016) ("Prison officials can manifest deliberate indifference to a prisoner's needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F. 3d 816, 829 (7th Cir. 2009).")

[40] *PPFF,* pp. 1-3, 5-16, 56-58, 60, 81.

[41] *See* Plaintiff's Exhibit 3, *Deposition Testimony of Tyran Pinkins at p. 391-392, 397-398, 569, 571-572.*

[42] *PPFF*, pp. *61, 76.*

claims based on credibility. In sum, the "good faith" efforts of the Plaintiff begin with RCJ medical records evidencing written requests for medical attention by Pinkins, which show a three-day delay regarding obtaining immediate medical attention for his right eye. The County Defendants, however, continually and conveniently failed to acknowledge that Plaintiff's complaints of deliberate indifference <u>are not</u> limited to the medical record. Pinkins' deliberate indifference claims are further supported by his own deposition testimony that oral requests for medical attention were completely denied and numerous written requests for medical attention were also denied when his forms were thrown in the trash[43].

The County Defendant's continued protest that counsel had not provided supporting documentation of merit to his liking does not negate the evidence with which Plaintiff relies on for a good faith effort to prosecute such claims. *Plaintiff's Proposed Findings of Fact* contains ample evidence. Plaintiff was homeless throughout most of his adult life. His injuries from 10/6/2016 are well documented.[44] The Plaintiff's history of seizures was known to the Defendant.[45] The Defendant's grievance of Plaintiff failing to adequately respond to his email or request medical records is completely groundless and not cognizable by any standard under Rule 11. Plaintiff produced all the records in his possession, signed releases for information and made Plaintiff available for three days of depositions; well past the legal time limit.

Further, the seven (7) sentences Defendants used to address Plaintiff's claims of violating the Americans with Disabilities Act ("ADA") and claim for false imprisonment further prove that the County Defendants failed to bring a substantive argument for awarding sanctions.[46] There is entirely no substance in accordance with Rule 11 when addressing the "good faith" standard.

---

[43] *Id.*
[44] *PPFF,* pp. 1-6;
[45] *PPFF,* p. 18; *see also PPFF*, pp. 1, 7, 14, 17, 18, 20.
[46] ECF 118, p. 11.

Instead, Defendant's arguments rest entirely on an exaggerations such as the assertion of no merit, egregious conduct, and lack of reasonable inquiry. For the sake of clarity, despite the Defendants merely allocating seven (7) sentences to challenge the Rule 11 basis of such claims, the Plaintiff will again address its good faith and proper basis for bringing such claims herein.

Finally, the Defendants have not alleged any "improper purpose" in supporting its contention that Plaintiff's conduct would warrant its *Motion for Sanctions* because it does not exist. The facts alleged in the Complaint have evidentiary basis and a good faith argument in law. The Plaintiff has properly alleged such harm attributable to the County Defendants. The time and discovery burdened upon the Defendants for such claims have been minimal and only involved production of the medical records, and the facilitation of the depositions of Defendants Thompson and Ellenberger where many volatile admissions were further discovered. There is nothing to gain, whatsoever, for the Plaintiff or his counsel to bring such action in bad faith and no specific theory to the contrary has been advanced by the County Defendants. As such, the *Motion for Sanctions* should be denied.

## VI.  THE COUNTY'S CLAIMS OF FRIVOLITY ARE SOLELY CONCLUSORY

The County's *Motion for Sanctions* contains mainly conclusory allegations which state that Plaintiff's claims have "no merit" but fails to provide meaningful substantive analysis. Defendants' provides one sentence that states "to the extent there were delays between the dates/times of the requests and the dates/times of treatment, there is no evidence the plaintiff suffered harm as a result." Yet, Pinkins testified that he was in pain from a hemorrhaging eye, which is the standard

for objective reasonableness in delaying care. In the context of Rule 11, there clearly is a valid supported claim for harm. The legal standard, however, is pain.[47]

In an attempt to dispose of the *Monell* claim, again, the Defendant makes a one sentence conclusory statement unsupported with analysis. He asserts that, "there being no viable underlying constitutional violations against either Deputy, the Monell claim against the County similarly lacks any merit." The lengthiest part of any supposed analysis offered by the Defendants is an exact lift of their *Motion for Summary Judgment* which references dates on which Pinkins allegedly received treatment.

Ellenberger testified that for the last 22 years, when someone alleges a serious medical condition, he has to take a form and submit it to medical. Ellenberger testified that, "we are trained, in my 22-and-a-half years at RCJ, to give inmates Medical Request Forms, that they will fill out and they will hand back to us, in which they will get a copy of, and it will go down to the medical department, and they process it as they see fit."[48] Ellenberger further testified that "Again this is a form that is given to an inmate as not having a medical emergency at the time. So, therefore, they would be filing this out, and it would be passed on to mental health or the medical department of our facility.[49]" Ellenberger testified that in his professional opinion Pinkins had an open and obvious injury, but Ellenberger gave Pinkins a non-emergency form, thereby recklessly or intentionally delaying Pinkin's medical treatment[50]. Ellenberger confirmed that is the routine and practice at RCJ. Similarly, Sheriff Thompson testified that in the 22 years he has worked at RCJ,

---

[47] *See Exhibit 3 Deposition of Tyran Pinkins at 237-240.*
[48] *Ellenberger Dep.*, p. 80, 13-18, 20-25.
[49] *Id at 167*
[50] *See PPFF 3, 23, 25, 33, 35-36, 40, 52-53, 57-60.*

"he could not recall a time that he received a slip and read it and decided this person needs immediate medical attention."[51]

At this late stage, during summary judgment briefing, it may be that the County sought to burden the Plaintiff's counsel with a bare bones sanctions motion filled with conclusory allegations. Courts often defer consideration of certain kinds of sanctions motions until the end of trial to gain a full sense of the case and to avoid unnecessary delay of disposition of the case on the merits. This is a sensible practice where the thrust of the sanctions motion is that institution of the case itself was improper.[52] Thus, one can reasonably infer that the Defendants' purposes in filing the *Motion for Sanctions* was to further burden the Plaintiffs and cause an "unnecessary delay of disposition of the case on the merits."

Defendant continues with conclusory allegations on page eight (8) of the *Motion for Sanctions* by asserting once again that the claims against Deps. Ellenberger and Thompson are completely without merit. What Defendants fail to do is explain how. Instead, counsel completely misses the mark, as the eventual receipt of "treatment" is not at issue. The actual issue and basis of Plaintiff's claims is the delay in providing immediate medical attention for Pinkins which caused him to suffer unnecessary pain. Defendants make many conclusory allegations such as "the record clearly demonstrates," [the plaintiff] "failed to perform reasonable inquiry," "evident from the vague and ambiguous allegations" which again are conclusory allegations rebutted by the Plaintiff's evidence.

The Plaintiff pled four (4) claims against the County. The former two, false imprisonment and violation of the ADA, have not been addressed beyond a cursory mention.

---

[51] *Thompson Dep.*, p. 28, 4-13, 15.
[52] *Lichtenstein v. Consolidated Services Group Inc.,* 173 F.3d 17 (1999)**;** *see* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337, at 121 (2d ed. 1990).

Even more interesting, Defendants purports to the Court that claims against Ellenberger lack "any specific instance of conduct" despite the record to the contrary starting on October 9, 2016[53].

## VII. REQUESTING MEDICAL RECORDS ON MORE THAN ONE OCCASION, DOES NOT ADVANCE THE COUNTY'S CONTENTION OF FRIVOLITY.

Finally, any assertion that Plaintiff requested documents on more than one occasion does not demonstrate that the complaint was frivolous under Rule 11. Such a claim is simply not rooted in law and has no relevance to the Plaintiff's or counsel's intent to advance such claims in good faith. Instead, the County relies on personal attacks due to his disdain of receiving multiple requests for medical records instead of addressing the veracity and substantive aspect of the claims itself, that would tend to demonstrate frivolity. The only attempt to address the substance of Plaintiff's claims in the *Motion for Sanctions*, follows again, counsel's usual pattern of failing to address the substance of the claim and instead continuing with conclusory allegations such as "the second amended complaint they know asserted no merit yet proceeded anyway." Again, counsel fails to offer more than one sentence of "how" the claims lack merit. Pursuing a claim under Rule 11 does not equate to a Motion for Summary Judgment.

In the closing of the County's *Motion for Sanctions*, counsel, yet again, argues that the claims against Racine County are similarly "frivolous and sanctionable." Instead, counsel asserts the Plaintiff was seen by medical staff. As previously mentioned, a claim for deliberate indifference is distinguishable from a claim of medical malpractice. Plaintiff's claims for indifference invariably precede that of any care Pinkins would have received.

Next, the County purports that "the record lacks any evidence the care provided was inadequate." Counsel confuses allegations of deliberate indifference with that of medical

---

[53] *See PPFF 3-5, 20-71*

malpractice which is a gross deviation from the standard of care. The County's claims would potentially have some teeth if Plaintiff proceeded with such claims, however, Plaintiff has not alleged medical malpractice in this case. Unlike claims for medical malpractice, deliberate indifference claims can be readily determined by a lay person when such injuries are "open and obvious" and medical care would be reasonably afforded.

Finally, Defendants argue that Plaintiff's experts fail to identify any policy, procedure or custom that caused Plaintiff harm. Unfortunately, Defendant's argument lacks any truth. Ellenberger testified that for the last 22 years, when someone alleges a serious medical condition, he has to take a form and submit it to medical. Ellenberger testified that, "we are trained, in my 22-and-a-half years at RCJ, to give inmates Medical Request Forms, that they will fill out and they will hand back to us, in which they will get a copy of, and it will go down to the medical department, and they process it as they see fit."[54] Ellenberger further testified that "Again this is a form that is given to an inmate as not having a medical emergency at the time. So, therefore, they would be filing this out, and it would be passed on to mental health or the medical department of our facility.[55]". Ellenberger testified that in his professional opinion, Pinkins had an open and obvious injury, but Ellenberger gave Pinkins a non-emergency form, thereby recklessly or intentionally delaying Pinkin's medical treatment. Ellenberger confirmed that is the routine and practice at RCJ[56].

Similarly, Sheriff Thompson testified that in the 22 years he has worked at RCJ, "he could not recall a time that he received a slip and read it and decided this person needs immediate medical attention."[57]

---

[54] *Ellenberger Dep*., p. 80, 13-18, 20-25.
[55] *Id. At 167,*
[56] *Id. at 211*
[57] *Thompson Dep*., p. 28, 4-13, 15.

Both Ellenberger and Thompson demonstrate a policy of denying immediate medical care resulting in an unofficial custom at RCJ, which is **practiced,** blatantly disregarding RCJ official policy.

> **584.100B(4)** However if a Staff member or supervisor feels that an inmate should simply be seen by jail health care staff during the next scheduled sick call (whether or not jail nurse is on duty at the time), he or she will complete the upper portion of a REQUEST FOR MEDICAL ATTENTION form (J-27a) and route the form to the jail health care office.

> a.     This would apply <u>only</u> to a situation in which a Staff member or supervisor is **reasonably confident** that a situation can wait until the next sick call- that is, is <u>not</u> a situation which in any way seems to require emergency or other immediate attention, or very timely evaluation for any other reason.[58]

Plaintiff had a hemorrhaging right eye that worsened on 10/9/2016.  When Ellenberger made the Plaintiff fill out a non-emergency form, it was for a routine sick call, delaying plaintiff's treatment by three days[59].  Ellenberger testified that plaintiff had an open and obvious injury which required immediate medical treatment. Ellenberger followed an RCJ custom, or practice, of disregarding RASO 584.100B(4) and preventing detainees from seeking immediate medical care and forcing serious health issues into a routine sick-call.

In the instant case, the trier of fact, a lay person, could reasonably conclude that such policy of "giving the detainee a form" was inextricably linked to and believed to have caused the direct harm to Pinkins. More importantly, such issues are properly addressed in motions for summary judgment, not Rule 11 Sanctions as the County argues. A Motion pursuant to Rule 11:

> Should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss,

---

[58] *See* Plaintiff's Exhibit 5.
[59] *See PPFF 3, 23, 25, 33, 35-36, 40, 52-53, 57-60.*

> a motion for judgment on the pleadings, a motion for summary judgment,
> or a trial on the merits.[60]

Here, Defendant's *Motion for Sanctions* questions both the legal adequacy and the factual integrity of the Plaintiff's claims brought in their original and amended Complaints. The Defendant's *Motion for Sanctions* includes language that is more akin to a motion pursuant to Rule 56 (Summary Judgment). Defendant requests, at the outset and in an inappropriate pleading, that this Court assess the merits of the Plaintiff's claims and Plaintiff's ability to have determined the truth of the matters asserted. Those issues were addressed in the Plaintiff's Response Brief to Defendant's Motion for Summary Judgement. Although Rule 11 does impose a duty on parties and counsel to conduct reasonable inquiry into a claim or argument, "it was not intended to provide another level of pretrial review on the merits" of defendants' arguments.[61] The County's *Motion for Sanctions*, as a second means to accomplish its motion for summary judgment, is not only improper but also intricately contradicted by the Defendant's own admissions.

Counsel's sanction motion relies on numerous requests for medical records in litigation which, in any way, demonstrates proper basis for bringing such claims. The County never argues the lack of substance within the medical records because the evidence contained within the 695 pages clearly shows medical "issues" and calls for help. The medical records confirm the delays in treatment, precisely what the Plaintiff's deliberate indifference claims allege against Ellenberger and Thompson.

## VIII. THE COUNTY FAILS TO ADDRESS PLAINTIFF'S ADA AND FALSE IMPRISONMENT CLAIMS BEYOND GENERAL AND CURSORY REFERENCES

---

[60] Wright and Miller, 5A Federal Practice and Procedures, §1335, The Elements of the Standard of Certification, (3d ed.) April 2017.
[61] *PAPA JOHN'S INTERNATIONAL, INC. v. REZKO*, No. 04 C 3131, 7 (N.D. Ill. Mar. 3, 2006).

ADA CLAIM

As to the ADA claims, counsel alleges that there is no evidence that Plaintiff suffers from a qualifying disability. To the contrary, the Plaintiff has asserted he suffers from seizures, indicated the same to Deputy Ellenberger and Thompson, and put the same in writing as evidenced by the non-emergency form provided to, reviewed by, and signed by Deputy Ellenberger.

The Court must assume medical questions asked of inmates are for purposes of providing inmates proper accommodations regardless of income or homelessness. Furthermore, Deputy Ellenberger admitted under oath that he knew Pinkins suffers from seizures, despite the same occurring in his presence.[62] Ellenberger also admitted under oath that he was familiar with the facts involving Officer Diedrich that is widely known to have begun from a perceived seizure suffered by Pinkins.[63] Furthermore, Ellenberger admitted that RCJ would normally provide reasonable accommodations to inmates who suffer from seizures by providing a mattress to inmates to lay on the floor to avoid falling of the top bunk. Ellenberger further testified that Pinkins was not provided such accommodation and he lacked knowledge of any accommodation made for Pinkins despite his knowledge that Pinkins suffered seizures.[64]

FALSE IMPRISONMENT

Finally, as to the false imprisonment claim, as argued in Plaintiff's *Brief in Opposition to Summary Judgment*, Plaintiff is pursing such claim against the County for failure to conduct a minimal investigation into Pinkins' protests of being held unconstitutionally due to his involuntary acts suffered during a medical emergency (i.e., seizure). Plaintiff's pursuit of such claim is not

---

[62] *PPFF 39, 67, 69*
[63] *Id.*

based on the improper conduct of an assistant district attorney employed by the State and has not in any way limited its false imprisonment claims against the County on such basis. As custodian of the Plaintiff, the Seventh Circuit has recognized a duty imposed on correctional officers to perform minimal investigations after an inmate's reasonable protests and further required County Defendants to correct the error of another. At the onset, "False imprisonment, for purposes of a § 1983 claim, is defined as detention without legal process."[65] It is important to note that the Seventh Circuit recognized the hinderance of a "legal process" to be sufficient grounds for asserting false imprisonment. The interference with such process by omission and not complying with a constitutional duty would provide sufficient basis to hold the County of Racine liable in this regard. Plaintiff was held at RCJ for months before a preliminary hearing and testified that RCJ Sheriffs routinely deprived him of his legal paperwork.[66]

## IX. ATTORNEY LAMARR SHOULD BE DISMISSED BECAUSE HE WAS NOT OF COUNSEL AT THE FILING OF THE COMPLAINT WHEN RULE 11 DUTIES ATTACH.

Plaintiff's counsel, Attorney B'Ivory LaMarr, whom with the most basic inquiry would have shown that such counsel did not enter into such case until November 6, 2020[67] clearly negates any duty raised by Rule 11 nor establishes any failure of a duty to have existed at the time the Plaintiff brought its complaint against County Defendants. Defendant's failure to conduct reasonable inquiry themselves further demonstrates the baseless, emotional, and improper use of Court resources to address the merit of the claims which could have been properly addressed in motions under Rule 12(b)(6) or Rule 56.

---

[65] *Wallace*, 549 U.S. at 389, 127 S.Ct. 1091. *Brown v. Dart*, 876 F.3d 939, 941 (7th Cir. 2017).
[66] *See Exhibit 3 Deposition of Tyran Pinkins at 509, 652-656*
[67] ECF 60.

**X.**    **THE DEFENDANT'S MOTION FOR SANCTIONS FAILS FOR A PROCEDURAL DEFECT AS TO NOT EFFECTUATE PROPER SERVICE TO PROVIDE PLAINTIFF SAFE HARBOR PERIOD REGARDING Attorney B'IVORY LAMARR**

The County Defendants failed to effectuate proper service of its safe harbor letter under Rule 11, regarding Attorney B'Ivory LaMarr because it was sent solely via e-mail, and without prior written consent from the Plaintiff and its counsel, to accept such service by email.[68]

FRCP Rule 11 requires:

> "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected **within 21 days after service** ..."[69]

The County Defendants presented its *Motion for Sanctions* without 21 days of "service" to the Plaintiffs, but not Attorney LaMarr, and have not in any way supported their basis for effective service. Such failure allows for the Plaintiff and the Court to broadly interpret how Defendants intended to comply with FRCP 5. The Plaintiff's best presumption is that Defendants intended to comply with FRCP 5(b)(2)(E).   However, any effort under FRCP 5(b)(2)(E) fails because Plaintiff's use of email was not provided with written consent to accept service, by Attorney LaMarr.

FRCP 5(b)(2)(E) explicitly provides:

> **(E)** sending it to a registered user by filing it with the court's electronic-filing system or sending it by **other electronic means that the person consented to in writing** in either

---

[68] *Equal Employment Opportunity Commission v. Cabin*, 05-C-0507-C, at *2 (W.D. Wis. May 9, 2006) ("even if defendant emailed the motion to plaintiff, defendant did not meet all of the requirements of Fed.R.Civ.P. 5(b)(2)(D) because it did not have, nor did it subsequently obtain, plaintiff's written consent for electronic service.")

[69] Fed. R. Civ. P. 11

of which events service is complete upon filing or sending but is not effective if the filer or sender learns that it did not reach the person to be served.[70]

Because Attorney LaMarr never gave written consent to accept service via e-mail, the safe harbor letter and *Motion for Sanctions* is thereby ineffective to him.[71] Further, because the Defendants failed to comply with effective service, there is no assurance that Plaintiff received and had notice of its *Motion for Sanctions* and requisite safe harbor for the full mandatory 21-day period prior to the Defendant filing its *Motion for Sanctions* with the Court. The safe harbor provision is a mandatory procedural prerequisite, and sanctions imposed without compliance are improper.[72] If a court sanctions by motion without adhering to the 21-day safe harbor, it abuses its discretion.[73]

The court must give the rule its plain meaning and apply the text rather than try to improve upon it.[74] If interpretation is necessary, the court must consider both the purpose of the rule and the deficiencies in its prior form which the amendment was designed to correct.[75]

Furthermore, proper diligence by Defendants could have avoided the issues at stake by properly adhering to *The Federal Rules of Civil Procedure* and its *Amendments*, which expressly address appropriate service.

Rule 11 Committee Notes expressly provide the following guidance:

---

[70] Fed. R. Civ. P. 5(b)(2)(E).
[71] *See* Fed. R. Civ. P. 5(b)(2)(E); *see also United States v. Supervalu, Inc.*, No. 11-cv-3290, at *3-4 (C.D. Ill. Apr. 17, 2017) (finding that email service was not effective because there was no showing that there was a consent in writing to accept service by email.)
[72] *In re McNichols,* 258 B.R. 892, 902–03 (Bankr. N.D. Ill. 2001).
[73] *Divane,* 200 F. 3d at 1025; *In re CMGT, Inc.*, 458 B.R. 473, 486 (Bankr. N.D. Ill. 2011).
[74] *Pavelic LeFlore v. Marvel Group,* 493 U.S. 120, 123, 126, 110 S.Ct. 456, 107 L. Ed. 2d 438 (1989).
[75] *Cooter,* 496 U.S. at 392, 110 S.Ct. at 2454.

a. **The FRCP 11 Amendments Expressly mandate that the Safe Harbor period "only" begins after "Service" of the Motion for Sanctions and the failure to comply with such rules are sanctionable itself.**

The 1993 Amendment and Advisory Committee Notes explicitly state:

### COMMITTEE NOTES ON RULES—2003 AMENDMENT

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, **the revision provides that the "safe harbor" period begins to run only upon service of the motion**. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion. As under former Rule 11, **the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions**. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11-whether the movant or the target of the motion-reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.[76]

Here, providing a letter to Attorney LaMarr via e-mail, at best, would constitute an "informal notice" of a potential violation to counsel, subject to the requirements of the 1993 Amendments, the Defendant fails to comply with the procedural requirements to proceed with preparing and serving a Rule 11 motion upon counsel. The failure of counsel to properly prepare and "serve" a Rule 11 motion is not excusable and instead sanctionable.

b. **The FRCP 11 expressly states that knowledge and use of an E-mail address does not effectuate proper service.**

### COMMITTEE NOTES ON RULES—2007 AMENDMENT

The language of Rule 11 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

**Providing an e-mail address is useful but does not of itself signify consent to filing or service by e-mail.**[77]

---

[76] *Id.*

[77] *Id.*

The failure of the defendants to properly comply with the proper service mandates under FRCP 5 to Attorney LaMarr shows that the Defendants attempted effort to serve Plaintiffs its "motion for sanctions via letter" and allot a "safe harbor" period prior to filing, fails as a matter of law due to improper service and should be dismissed immediately.

## CONCLUSION

The Defendant's *Motion for Sanctions* does not meet the requirements of Rule 11 and due to its inclusion of discussions of the merits of the Plaintiffs' underlying Second Amended Complaint, it cannot be ruled upon prior to any determination on the merits of the Plaintiff's case. Defendant's *Motion for Sanctions*, by attacking the substantive legal and factual basis of the Plaintiff's claim, falls outside the scope of a Rule 11 Motion, and should more appropriately be considered a Motion pursuant to Rule 56. Further, Defendant's *Motion for Sanctions* fails to conform to the requirements of a Rule 56 Motion, and in so doing, should be denied. Further, the Defendants have filed this *Motion for Sanctions* with the improper purposes of over burdening the Plaintiff from responding to the substantive nature of its pending Rule 56 motion.

Counsel's discovery request (medical records) on multiple occasions during litigation and not being provided a response via email to support counsel's inquiry as to the basis of such claims, is not a cognizable basis to justify a Rule 11 claim and is frivolous in and of itself. Rule 11 has never been recognized as a basis for revenge for bruised egos or been enacted to further facilitate intimidation of the plaintiff while he seeks relief. Additionally, Rule 11 has never been a proper basis to administer judicial resources to aide an attack to intimidate a plaintiff for the pursuit of its own benefit.

As it relates to Attorney's Strouse and Napierala, as stated above, no conduct has established that Plaintiff counsel failed to bring such claims in good faith supported with sound evidence and in good faith against the Defendants for its actions and omissions involving Plaintiff Pinkins. The Plaintiff's discovery further provides evidence of such claims established by the volatile admissions of the Defendants themselves. Therefore, we respectfully ask the court to dismiss this *Motion for Sanctions* against counsel immediately as the foregoing rationale by County Defendants fails to establish the good faith pursuit of such claims.

Dated this  21st day of July, 2021
Attorneys for Plaintiff,

_____/s/ *Paul Strouse*_____
Paul Strouse- *Attorney At Law*
SBN:  1017891

Drafted By:

Strouse Law Offices
825 W. Wisconsin Ave.
Milwaukee, WI 53233
(414) 390-0820